PER CURIAM:
Claimant brought this action for damages sustained to his personal property due to the alleged negligent installation of the Brent Belcher Bridge on County Route *217 3/23, locally known as Stowers Road, which caused the Middle Fork of the Mud River to flood in Griffithsville.[1] At this location, County Route 3/23 is maintained by respondent in Lincoln County. The Court is of the opinion to make an award in this claim for the reasons more fully set forth below.
In 1995, respondent constructed the Brent Belcher Bridge and embankment on County Route 3/23 in order to replace a bridge about fifteen-hundred feet upstream from the location in question. A separate five foot wide foot-bridge, which was forty to fifty feet long, and just upstream from the location of the Brent Belcher Bridge, was removed in order to construct the Brent Belcher Bridge. At this location, County Route 3/23 traverses in an east-west direction and crosses the Middle Fork of the Mud River which flows in a southerly direction. Respondent chose this valley location because it had a better r oadway approach than the site fifteen hundred feet upstream. The beams of the seventy foot precast concrete box bridge were implanted thirty-three inches into the ground. The road surface portion of the bridge has an asphalt overlay and guardrail installed along each side of the bridge. Wing walls were not present for the foot-bridge, but were constructed for the Brent Belcher Bridge. The bottom of the bridge is approximately twelve feet above the river level, which is the same height as the previous foot-bridge.
Before construction, respondent completed a hydraulic analysis and studied the river as well as rainfall in the area. According to respondent’s bridge design engineer Gregory Lee Surber, the bridge was designed and constructed with a low elevation in the approach road, so if water flowed to the bridge, it would flow through the low place in the road and subsequent damage from water flow would be reduced. Mr. Surber was not prepared to testify in detail about specifications and hydraulic studies.
At the hearing, Mr. Mahone testified that the embankment of W.Va. Route 3, p roceeding n orth, is t wo a nd o ne-half f eet h igher in e levation t han h is f ormer property. In addition, Mr. Mahone asserts that the guardrail on the bridge collects debris and adds an extra two and one-half feet to this elevation. Mr. Mahone asserts that the bridge construction, excavation and fill created a dam and “flood zone” in the valley area, which is the proximate cause for the flood damage to his personal property. Mr. Mahone stated that since March of 1997, following construction of the Brent Belcher Bridge, the area in question has flooded four times.
According to Stanley Lee Rose, a resident of thé community for about twenty years, during periods of heavy rain the water from Middle Fork flows onto the *218 new bridge carrying debris. The debris blocks further water which then backs up and flows onto the properties upstream which includes that of the claimant and Mr. Rose. The bridge is sufficient to handle water except when water flows to the outer banks of the river. Mr. Rose asserted that before construction of the bridge, about an inch of water would accumulate in his basement, now about four feet of water accumulates in his basement. Mr. Rose further testified that he has had to renovate his basement.
On March 2, 1997, the area in question began to flood in isolated pockets after extensive rain during the previous day. By March 3, 1997, the flood waters had receded. Emergency Services Director Allen Holder, who is the county’s link to the State and Federal governments in times of disaster, testified that he observed extensive damage on March 4, 1997, and requested National Guard troops. About forty National Guard troops were sent to various locations in Lincoln County to assist in clean-up efforts. Extensive debris remained in the area, creating extensive county wide disposal cost, including tipping fees of about $9,000.00. Mr. Holder further testified that the Federal Emergency Management Agency (hereinafter referred to as “F.E.M.A.”) provided monetary assistance to residents who were damaged by the flood. Mr. Holder was unable to determine the cause of the flooding.
The flood damaged Mr. Mahone’s personal property which he stored in the basement of his parents’ residence after he moved to the residence in 1991 in order to care for his p arents. M r. M ahone did n ot h ave flood in surance and h e was not eligible for financial assistance from F.E.M.A. According to Mr. Mahone, his personal property items such as a television, VCR, Honda Moped, Onan generator, table with chairs, couch, lamps, pots, pans, table and end table could not be salvaged from t he r esidence’s b asement a nd w ere dis carded. M r. M ahone c alculated t he sustained loss to be in the amount of $11,000.00, but he depreciated value of the items to the sum of $7,000.00 which amount represents his damages.
The position of respondent is that it was not responsible for the flooding that occurred to claimant’s property. Respondent asserted that the Brent Belcher Bridge was constructed properly and that the damage experienced by claimant was the result of extensive flooding throughout Lincoln County. According to Highway Administrator Larry Paul Pauley, not since 1962 had the area experienced such flooding. Mr. Pauley further testified that as a result of the flood, the county sustained four to five million dollars in road damage.
On prior occasions, this Court has held that respondent may be liable for the condition posed by a bridge. Burgess vs. Dept. of Highways, 18 Ct. Cl. 2 (1989). Respondent has an obligation to construct bridges in such a manner as not to create subsequent flood problems for nearby property owners. Daniels vs. Dept. of Highways, 16 Ct. Cl. 43 (1986). In claims regarding water damage, the Court will examine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. Cl. 97 (1996).
*219 It appears to the Court that the construction of the bridge approaches and wing walls, the increased size of the Brent Belcher Bridge over that of the previous foot-bridge, and the propensity of the bridge guard rails to collect debris, collaborated to create a damming effect at the site, resulting in the damage complained of, constituting sufficient negligence on the part of respondent on which to base an award.
Notwithstanding the negligence of respondent, the Court is of the opinion that claimant was also culpable in the loss sustained. Claimant’s personal property was discarded indiscriminately. No effort was made to salvage those items of personalty which could have been saved, e.g., moped, generator, pots and pans. Accordingly, the Court determines that a fair and reasonable amount for claimant’s loss to be the amount of $3,900.00.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to and does make an award to claimant in the amount of $3,900.00.
Award of $3,900.00.

 At a pre-trial conference on January 20, 2000, Mr. Mahone reduced the amount of his claim from $67,000.00 to $7,000.00, for damage only to his personal property after he sold the residence in question as the Administrator of the Estate of Lola F. Mahone.